# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# ELKINS

**ANTOINE HILL,**

    Petitioner,

v.                                      **CIVIL ACTION NO. 2:17-CV-62**
                                           **(BAILEY)**

**DEWAYNE HENDRIX, Warden,**

    Respondent.

## ORDER DISMISSING PETITION

### I.  Introduction

On this day, the above-styled matter came before this Court for consideration of *pro se* petitioner Antoine Hill's Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Doc. 1]. On October 15, 2017, respondent filed a Motion to Dismiss or, Alternatively, for Summary Judgment [Doc. 18]. This matter has been briefed and is ripe for adjudication. For the reasons that follow, this Court will grant the respondent's Motion and dismiss the petition.

### II.  Factual and Procedural History

On October 7, 2008, petitioner was sentenced in the Eastern District of Virginia to a one hundred thirty-seven (137) month term of imprisonment for heroin trafficking and firearms offenses in violation of 21 U.S.C. § 841, 18 U.S.C. § 922(g)(1), and 18 U.S.C. § 924(c). (Case No. 3:07-cr-407). The BOP's website indicates petitioner's projected

1

release date is June 23, 2018. Petitioner was originally designated to FCI Morgantown, but was recently transferred to FCI Butner.

On April 27, 2017, the petitioner, then an inmate at FCI Morgantown, filed a Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241, seeking an order directing the Bureau of Prisons ("BOP") to transfer him to a halfway house or Residential Reentry Center ("RRC") for the last twelve (12) months of his term of imprisonment [Doc. 1]. On May 1, 2017, petitioner paid the required $5.00 filing fee [Doc. 4]. On August 16, 2017, this Court conducted a preliminary review of the petition and found that summary dismissal of the same was not warranted [Doc. 12]. Therefore, this Court ordered the respondent to show cause why the writ should not be granted. In response, the respondent filed its Motion to Dismiss or, Alternatively, for Summary Judgment [Doc. 18]. Subsequently, this Court issued a **Roseboro** Notice [Doc. 20] informing the petitioner of his right and obligation to file a response.

III.    Standards of Review

    a.    **Rule 56 Motion for Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248 (1986). Thus, the

Court must conduct "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323-25; *Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249 (citations omitted).

### b. Rule 12(b)(6) Motion to Dismiss

In reviewing the sufficiency of a complaint under Fed. R. Civ. P. 12(b)(6), a district court must accept the factual allegations in the complaint as true. *Zak v. Chelsea*, 780 F.3d 597, 601 (4th Cir. 2015)(citing *Matrix Capital Mgmt. Fund, LP v. Bearing Point, Inc.*, 576 F.3d 172, 176 (4th Cir. 2009)). While a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

A complaint must be dismissed if it does not allege "'enough facts to state a claim to relief that is *plausible* on its face.' ***Bell Atl. Corp. v. Twombly***, 127 S.Ct. 1955, 1974 (2007) (emphasis added)." ***Giarratano v. Johnson***, 521 F.3d 298, 302 (4th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." ***Ashcroft v. Iqbal***, 556 U.S. 662, 678 (2009). This requires "more than a sheer possibility that a defendant has acted unlawfully." ***Id***. However, when reviewing the sufficiency of a complaint, a court may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." ***Tellabs, Inc. v. Makor Issues & Rights, Ltd.***, 551 U.S. 308, 322 (2007). A court may consider documents attached to a motion to dismiss when they are "integral to and explicitly relied on in the complaint and . . . the plaintiffs do not challenge [their] authenticity." ***Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.***, 367 F.3d 212, 234 (4th Cir. 2004).

IV. Discussion

On April 9, 2008, the Second Chance Act of 2007, Pub.L.No. 110-99, was enacted. It amended 18 U.S.C. § 3624 and provides that the Director of the BOP shall "ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months) under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." See 18 U.S.C. § 3624(c)(1). The statute provides that those conditions may include confinement in a community correctional facility/community corrections center/residential re-entry center, all of which are commonly known as a "half-way house." The statute

4

provides that the decision to confine a prisoner in a "half-way" house shall be made on an individual basis and shall be made in light of several factors, most of which are identified in 18 U.S.C. § 3621(b).  See **Miller v. Whitehead**, 527 F.3d 752 (8th Cir. 2008) (BOP may consider factors in addition to those identified in § 3621(b)).  The factors identified in 18 U.S.C. § 3621(b) are as follows:

> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence-(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b).

In his petition, the petitioner seeks an Order to compel the BOP to place him in an RRC for the final twelve months of his sentence [Doc. 1].  In its Motion to Dismiss or, Alternatively, for Summary Judgment [Doc. 18], the respondent argues the petitioner has received the full extent of any and all relief to which he is entitled.  Further, respondent argues petitioner cannot use a habeas petition to circumvent the BOP's discretion to determine whether, and for how long, he will be released to an RRC.  Accordingly, the respondent asserts the petition is inherently moot and this Court lacks jurisdiction to address the claims.  Finally, respondent asserts the petition simply fails to state a cognizable claim [Doc. 19].

In this case, petitioner was originally scheduled to complete his federal prison sentence and be released from BOP custody on May 18, 2018 [Doc. 19 at 2]. BOP staff at FCI Morgantown recommended that Hill be released to an RRC for a period lasting between one-hundred eighty-one (181) and two-hundred seventy (270) days [Id.]. On November 10, 2017, this Court received a letter from the petitioner which states that he had lost all of the projected halfway house time [Doc. 23]. Subsequently, this Court ordered the respondent to file a supplemental reply including case authority for the assertion that staff at the RRC retain discretion to reduce the length of time recommended by prisoner's unit staff based on budgetary concerns and space availability and provide this Court with a declaration from the individual who reduced the petitioner's RRC placement. Further, this Court ordered that if petitioner's RRC placement had been denied in its entirety, respondent shall provide the Court with supporting documentation reflecting the reasons for such denial [Doc. 24].

On January 19, 2018, the respondent filed its supplemental reply in accordance with this Court's Order [Doc. 27]. The respondent clarified this Court's concerns by stating the following:

> BOP employees at an inmate's specific federal correctional facility analyze the factors outlined in 18 U.S.C. § 3621(b) and prepare a recommendation regarding whether, and for how long, the inmate should be released into a community confinement facility, such as a halfway house or RRC. Exhibit 1, Declaration of Manish Patel ("Patel Decl.") at ¶¶ 1-3; Exhibit 2, Declaration of Jon Gustin ("Gustin Decl.") at ¶¶ 1-3. The BOP then consults and coordinates with particular RRC facilities to determine whether

the facilities can accommodate federal inmates that the BOP has recommended to be released into an RRC. Exhibit 1, Patel Decl. at ¶¶ 3-7; Exhibit 2, Gustin Decl. at ¶¶ 3-6. Generally, the BOP attempts to place a federal inmate in an RRC in the geographic area where the inmate plans to reside after he completes his prison sentence. Exhibit 2, Gustin Decl. at ¶ 3. This allows the inmate to become integrated into that particular community and to capitalize upon employment, residential, and other societal resources in the area. Id.

The individual RRC facilities are not owned, operated, or controlled by the BOP. Exhibit 1, Patel Decl. at ¶ 4. Instead, the BOP contracts with these RRC facilities to accommodate federal inmates as necessary and appropriate. Exhibit 1, Patel Decl. at ¶ 4; Exhibit 2, Gustin Decl. at ¶ 5. As a practical matter, each individual RRC facility is only equipped to accommodate a specific number of residents at any given time as the result of bed space availability. Exhibit 1, Patel Decl. at ¶ 5; Exhibit 2, Gustin Decl. at ¶ 6. When an RRC does not have the space availability or financial resources to accommodate an inmate, the RRC coordinates with the BOP to adjust the amount of time, if any, that the inmate will spend in a community confinement facility. Exhibit 1, Patel Decl. at ¶¶ 3-7; Exhibit 2, Gustin Decl. at ¶¶ 3-7. Due to space and budgetary restraints, it is not uncommon for the BOP to coordinate and consult with an individual RRC facility to adjust the amount of time that a specific inmate will spend at an RRC. Exhibit 2, Gustin Decl. at ¶ 6.

The consultation process between the BOP and any individual RRC facility takes into account the BOP's individualized assessment of the inmate as well as the resources of the BOP, the individual RRC, and the behavior and characteristics of the inmate. Exhibit 1, Patel Decl. at ¶¶ 6- 15; Exhibit 2, Gustin Decl. at ¶¶ 3-4. These factors are specifically addressed in 18 U.S.C. § 3621(b). Exhibit 2, Gustin Decl. at ¶ 4. The availability of bed space at an individual RRC further impacts the ability to place inmates in specific RRC facilities. Id. Similarly, if an inmate engages in misconduct within a federal correctional facility that leads to disciplinary proceedings, that conduct may serve as a strong indication that the inmate will not easily or appropriately adjust to the RRC environment or the community in general. Id.

In October 2017, the BOP recognized that many RRC facilities were operating beyond their contractual space allocations and that the BOP budgetary allocations for the RRC placements were exceeded. Exhibit 2, Gustin Decl. at ¶ 7. In response, the BOP has implemented nationwide guidance to ensure that RRC facilities operating within their contractual capacities and that the BOP remains within its budgetary allocations. Id. Specifically, this guidance includes adjusting, limiting, or eliminating the amount of time that individual federal inmates will spend in an RRC. Id. However, the BOP still carefully assesses each federal inmate on an individualized basis to determine the appropriate amount of time that the inmate should spend in an RRC. Id.

The United States District Court for the District of South Carolina dismissed inmate Derrick Cook's habeas petition in which Cook alleged that the amount of time that he was released into an RRC was improperly reduced. See *Cook v. Rivera*, 2012 WL 5199224 (D.S.C. Sept. 21, 2012), Report and Recommendation Adopted by *Cook v. Rivera*, 2012 WL 5199387 (D.S.C. Oct. 22, 2012). The BOP considered the requisite factors and recommended that Cook be released to an RRC for a period of twelve (12) months. *Id*. Due to projected bed space availability, the individual RRC facility reduced the BOP's recommendation and determined that Cook would be released to an RRC for a period of four (4) months. *Id*. In responding to Cook's habeas petition, the BOP confirmed that it is "wholly appropriate" for an individual RRC to reduce the amount of time that an inmate will spend at the RRC based upon projected bed space availability at the facility. *Id*. The court concluded that the BOP considered the requisite factors when it prepared Cook's initial RRC recommendation. *Id*. Further, the court noted that it lacked authority to review the substantive merits or thoroughness of the BOP's analysis or to direct the BOP to consider specific characteristics for an individual prisoner. *Id*. Ultimately, the court dismissed Cook's habeas petition because Cook had received an individualized RRC placement assessment. *Id*.

Here, the BOP originally recommended that Hill should be released to an RRC for a period lasting between one-hundred eighty-one (181) and

9

> two-hundred seventy (270) days. Exhibit 1, Patel Decl. at ¶ 13. Taking into consideration the BOP's analysis of Hill and the limited space availability at the RRC, the amount of time that Hill was approved to be placed into an RRC was reduced and he was scheduled to be released into an RRC in January 2018. Id. On December 28, 2017, Hill was disciplined and sanctioned at FCI Morgantown after he was discovered in possession of a cellular phone inside of the prison in violation of BOP policy. Id. at ¶ 14. When considering this disciplinary infraction in combination with the BOP's previous individual assessment of Hill and the limited space availability at the RRC, a BOP Residential Reentry Manager ("RRM") determined that Hill no longer met the requirements to be released into an RRC. Id. at ¶¶ 7, 13-14. Accordingly, Hill's RRC placement was reduced and subsequently eliminated based upon statutorily mandated factors that the BOP is required to consider when determining where to incarcerate an inmate, including the resources of the prospective incarceration facility (RRC bed space availability) and the history and characteristics of the prisoner (Hill's recent disciplinary infraction).

[Doc. 27 at 2-5].

Federal regulations dictate that a federal inmate may be released into an RRC for a maximum of twelve (12) months. 28 C.F.R. §§ 570.20-21. However, federal regulations do not establish any minimum amount of time that a federal inmate must spend in an RRC. Id. Similarly, federal regulations do not mandate that federal prisoners must be released to an RRC at all. Id. The BOP has exclusive discretion to determine whether, and for how long, to release an inmate to an RRC. *Syrek v. Phillips*, No. 5:07-cv-111, 2008 WL

4335494, *3 n. 1 (N.D. W.Va. Sept. 17, 2008) (citing **Woodall v. Federal Bureau of Prisons**, 432 F.3d 235, 251 (3d Cir. 2005)); **Pennavaria v. Gutierrez**, No. 5:07-cv-29, 2008 WL 619197, at *3 (N.D. W.Va. Mar. 4, 2008). The fact that the BOP can assign a prisoner to an RRC does not mean that it must. **Woodall**, 432 F.3d at 251.

In summary, the petitioner enjoys no guarantee of, or constitutional right to, a twelve-month RRC term of placement. Furthermore, for the reasons noted, the petitioner's Unit Team complied with the Second Chance Act by applying the criteria of 18 U.S.C. § 3621 to the specific facts of his case. Simply put, the BOP did all that was required. Therefore, the petition should be dismissed.

## Conclusion

Upon careful review of the above, it is the opinion of this Court that the respondent's Motion to Dismiss or, Alternatively, For Summary Judgment **[Doc. 18]** should be, and is **GRANTED**. Accordingly, this Court **ORDERS** that the § 2241 petition **[Doc. 1]** be **DISMISSED WITH PREJUDICE**. The Motion to Expedite **[Doc. 30]** is **MOOT**. This Court further **DIRECTS** the Clerk to enter judgment in favor of the respondent and to **STRIKE** this case from the active docket of this Court.

As a final matter, upon an independent review of the record, this Court hereby **DENIES** a certificate of appealability, finding that Mr. Hill has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record and to mail a copy to the *pro se* petitioner.

**DATED:** April 27, 2018.

/s/ John Preston Bailey
JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE